Oye, oye, oye. The Honorable Appellate Court, 5th District, State of Illinois, is now in session. The Honorable Justice Cates presiding, along with Justice Welch and Justice Moore. The first case this morning is number 518-0343, People v. Cole. Arguing for the appellant, Robert Cole, is Christina O'Connor. Arguing for the appellee, People of the State of Illinois, is Sharon Shanahan. Each side will have 10 minutes for their argument. The appellant will also have 5 minutes for rebuttal. Please note, only the Clerk of the Court is permitted to record these proceedings today. Okay, Ms. O'Connor, are you ready to proceed? I can't hear you. Oh, I apologize. Yes, Your Honor. Okay, thank you. You may proceed. Thank you. May it please the Court. Counsel, my name is Christina O'Connor. I am an Assistant Appellate Defender at the Office of the State Appellate Defender, and I represent Mr. Robert Cole in this matter. This case involves the denial of leave to file successive post-conviction petition. In his petition, Robert asserted that the sentence he received for an offense he committed when he was 18 years old violates the Illinois Proportionate Penalties Clause because he was more mentally similar to an adolescent than a fully mature adult who was still moving towards maturation. Robert also cited to various cases that support his claim, and Robert has followed what our Supreme Court has required similarly situated youthful individuals to do. Therefore, this Court should reverse the trial court's dismissal and remand for second stage proceedings. As an initial matter, the State has conceded that Robert has met cause in this case. Therefore, the only issue in dispute is whether or not Robert has proven prejudice. Currently, courts are split on how to handle the finding of prejudice in this case, and we do not have any specific guidance from the Illinois Supreme Court on what is required to prove prejudice here. Furthermore, as noted in the case People v. Daniels, there is no guidance on exactly what an individual who falls under a potential emerging adult claim is required to be successful, and the case People v. Harris does not suggest that a defendant's participation in a crime or discretionary sentence should utterly disqualify him from raising such a claim. In this case, you believe Harris allows the raising of a proportionate penalties issue in a successive post-conviction claim? Yes, Your Honor. Raising it to be able to eventually prove going through all the steps, that Harris, not necessarily, that Harris in that case, the defendant was not the principal and it was a mandatory sentence. So, as noted, it was in People v. Daniels. The citation is on paragraph 31. The court recognized that Harris does not suggest that that is the only way that a defendant can be successful in this type of claim. It is just highlighting that it's to the specific circumstances and facts of the case. Okay, thank you. You're welcome. In Robert's post-conviction petition, he detailed the case law and shows that this claim is cognizable. And Robert stated that he was, again, more mentally similar to an adolescent than a fully mature adult who was still moving towards maturation. And this is supported by the record. In this case, Robert confessed a day after the offense took place. He admitted his guilt. He pled guilty to every single count that he was charged with. And the only agreement was to a this offense was not serious. However, in terms of the apportionment penalties clause, that looks at the certain, I apologize, characteristics of the defendant and in light of the offense and all the attending circumstances. At Robert's sentencing hearing, counsel provided no evidence of mitigation. The only argument that and even the minimum sentence would be a long time. Robert stated that he was very sorry for what he had done. He was wrong and he wanted to apologize to everybody who was affected by his actions. The trial court found no factors and mitigation applicable, did not state Robert's age or consider his youth or attending circumstances. And it stated that it found no reason to impose anything other than the maximum cap that was allowed, which was 60 years. The PSI included information about Robert as a teenager that he had fronted to impress peers. He suffered from anger management issues. He had issues with both drugs and alcohol and with treatment, those symptoms could and did continue to improve. Now this court, he had no alcohol problems. Robert stated that he used to drink. And then at the age of 17, he was drinking every single day. However, at the time of the offense that he was not drinking at that time, but he did drink every single day while he was 17. And there's really no evidence in the record to show how that affected Robert as he was growing up. And he had no mental health problems. That is not according to record. He did not. However, Robert was on methamphetamine at the time and had a very lengthy history of drug abuse. So this court recently decided the case of people versus white. However, that case is distinguishable from this case at bar. Importantly, at the very beginning of that case, this court noted that it was on appeal. And at this case, this court for the fifth time, there were multiple appeals, which attacked the sentence and the defendant's conviction. The defendant was 20 years old. He did not show remorse for his crimes, and he attempted to avoid accountability. This court found that that defendant was not a teenager on the cusp between a juvenile and adult, that it was undisputed about any cognitive or developmental impairments. And that is different from what has occurred in this case. Robert was 18 years old. There is a difference between an 18 year old and a 20 year old. Robert was a teenager on the cusp between a juvenile and adult. Additionally, this is the first appeal that Robert has taken to this court, where the court is hearing on the merits. And Robert pled almost 20 years ago. Robert did show remorse for his crimes, and he admitted to what he did a day later. Robert never attempted to avoid accountability in this case. So in addition to the drug and alcohol abuse, while the record is not fully developed, it is not undisputed about any potential cognitive impairments that Robert may have suffered due to that use. You're saying that he showed remorse, but counsel for the state indicates that the officer said he was boastful and arrogant in making light of the situation. So when was he remorseful? At the sentencing hearing, Robert stated that he was sorry. And we're arguing that that was evidence of what Robert had earlier, that fronting to impress his peers. And that is something that is a teenage quality and actually supports his claim that he falls under this category. So he was over 18? Yes, he was 18 and a half, approximately. So he was a little bit past his 18th birthday. So he does not, under the law, fall under Miller. However, he is attempting to show that he falls under what our court has recognized that similarly youthful individuals can attempt to prove. And at this stage, Robert is not asking this court to find that his sentence is a violation of the Proportionate Penalties Clause. He is asking this court to find that he has stated enough to be able to move on to second stage proceedings, where he can have counsel be appointed to his claim in accordance with the law. And in order to prove... What did he attach to his petition that was new or different that the court didn't consider? Robert just discussed the case law and stated that he falled under this case law. However, there are courts that have held that is enough to prove prejudice in this context. In Keeple v. Ruiz, the case is factually similar. The defendant was 18 years old, he was the principal, and he received a lesser sentence than Robert did. He received 40 years. The reviewing court found the defendant was prohibited from raising this claim earlier, and that he should be given a chance to further his post-conviction proceedings. He made a well-cited legal argument, and he actually... The defendant in Ruiz stated something very similar to Robert, that he fell under this type of area of emerging adult claims. And the court noted that at this stage, the assertion must be taken as true. Furthermore, in Keeple v. Carrasquillo, again, the defendant was also 18, he was the principal, and it was another serious offense where a police officer was killed, and the court noted this. However, the court found that by requiring a showing of prejudice, that establishes a catch-22 in that situation. Without a developed record, the defendant cannot show his constitutional claim has merit, but without a meritful claim, he cannot proceed to a developed record. Robert, again, is not asking this... What prevents every 18-year-old from just coming in and asking to file a successive post-conviction claim and just alleging case law? I mean, shouldn't there be something more? Your Honor, the court should look at the overall record and making that determination. So, for example, in Keeple v. Handy, the defendant was 18 and a half, had multiple appeals. He attacked his sentence numerous times. And then, in addition to arguing that his case should just be remanded for a new sentencing hearing, the court on review discussed the record, the sentencing hearing, the PSI, and found that while the court had previously found the sentence to not be excessive, and the defendant did not state anything additional in addition to what was presented at the sentencing hearing, the court had already properly considered rehabilitation, and therefore, he should not be allowed to move on to second stage proceedings. Okay. You'll have a few minutes at the end of Ms. Shanahan's argument for rebuttal. Ms. Shanahan? Thank you, Your Honor. May it please the court? Counsel, my name is Sharon Shanahan. I'm still seeing opposing counsel. I guess. Anyway, I guess I will proceed with my argument. Can you hear me? Yes. Go ahead. All right. There we go. Thank you. My name is Sharon Shanahan. I represent the people of the state of Illinois. And I would like to start out with exactly the point, Your Honor, that you raised, Justice Cates, which is what is to prevent every 18 1⁄2, 19, 19 1⁄2, 20-year-old coming in and saying, look, case law has changed. I've proved prejudice. That's not what this court said in White. It's not what many other cases have said, and it should not be the holding of this court today. In People v. Smith, an Illinois Supreme Court case, this court has said that it is clear that the legislature intended that cause and prejudice determination be made on the pleadings prior to the first stage of post-conviction petitions proceedings. It went on to say that the cause and prejudice test for successive petitions requires the defendant to submit enough in the way of documentation to allow a circuit court to make that determination. It goes on to say, we conclude that leave of court to file successive post-conviction petitions should be denied when it is clear from a review of the successive petition and the documentation presented by the petitioner that the claims fail as a matter of law or where the successive petition with supporting documentation is insufficient to justify further proceedings. Now, that's pretty much what this court held in White. They said, you can't just make Justice a vague claim. You have to present specific facts that show why you personally fall under what we are broadly calling Miller claims of youthful indiscretions, I guess I'll call it. That's what this court decided, and I think that's where we are again. In People v. Moore, it relied heavily on this court's decision. It again says, you must submit enough documentation to allow a court to determine whether the cause and prejudice test has been met. Ms. Shanahan, do you think the documentation can be the PSI that was considered by the court originally? Is that the kind of documentation that could satisfy the test? I think it could be part of it. Yes, Your Honor. I would go on to say that if you review the PSI in this case, as well as the facts that were presented at the plea and the facts that were presented at the sentencing hearing, then you see that even if... Basically, what defendant wants a lawyer to help him put in those facts that he's left out of his petition. My first argument is that's not the way the case law has been interpreted specifically in this court. In many other cases, you have to present it with you. The second thing is, even if somehow you say, okay, you win, what is the ultimate relief? Well, you get a Miller-compliant sentencing hearing. Well, he had a Miller-compliant sentencing hearing. If you look at that PSI, if you look at the factual basis for the plea, if you look at the testimony at the sentencing hearing, you can see that he did indeed have a Miller-compliant. Now, the defendant says, oh, well, the judge didn't consider his youth. Illinois was one of the very first states in the United States to thoroughly consider youth. I mean, it goes back about his youth. He went on to say that... Of course, it's well-developed law that if you argue something to a judge at sentencing, that it's assumed that he did consider it. So the defendant's youth was considered. He repeatedly argued that he was a young man and caught in an unfortunate circumstance. The record reveals that the defendant lived with his mother and his stepfather. He got along fine with him, no problems. It reveals that he was a good student, that he had completed 11th grade, that he wanted to go to the army. I disagree with alcohol. I think it varies. The PSI, defendant was asked, do you have any alcohol problems? And he said, no. The documentation that's attached to the PSI from when the defendant was in juvenile detention goes back six years. It's two to six years before the commission of this murder. I think if anything, it proves that defendant is incorrigible because despite the fact that he got help and when he got out, he went right back to committing the kind of crimes that he's now arrested for. In fact, one of the crimes that he spent in juvenile detention was eerily similar to this, breaking into a house and stealing guns. This time he broke into a house, his grandfather's house. And his grandfather was not a threat to him. This is what appalls me the most personally in this case is that his grandfather was sound asleep. It wasn't like he was a threat to the theft of these guns. And he walked right up to him and put the shotgun to the back of his head and pulled the trigger. He was laughing in the car as they left. He was kind of excited about it. He was heard bragging and boasting to his co-defendant on the way to this trial. Now, counsel calls that fronting. I'll leave it to this court to decide exactly what fronting is and whether defendant's statements like that, number one, mean anything. And number two, whether they further support the fact that defendant had not matured and was not going to mature and was incorrigible or whether they support juvenile characteristics. The alcohol that defendant did say he drank when he was younger, which by the way, 17 and a year and a half before this crime. So, but it was Bud Light and tequila. And I'll bet you there aren't very many 17-year-olds out there that haven't had a Bud Light. So, he, by his own admission said he had not consumed alcoholic beverages for quite some time. And he didn't feel he had an alcohol problem. I think it's really important that he was the Supreme Court. We'll see what happens there, but in house, the defendant just was the lookout. In this case, the defendant was the principal actor. He went in, he stole the guns, he broke into the house, he stole the guns, he shot his grandfather. He was the principal actor. He had no diagnosis of any mental health disorders. And I mean, this, if you look at all that, that's a Miller-compliant sentencing hearing. So, he's gotten everything that he could possibly want, even were this court to decide that Miller applies to those over the age of 18. Okay. Thank you, Ms. Shanahan, for your argument. Rebuttal, Ms. O'Connor? Just a few points. So, we would argue that this was not a Miller-compliant hearing. Robert's own attorney did not argue that he had rehabilitative potential. He presented no evidence in mitigation. He did not discuss Robert's youth. He stated that he was 18 years old. The trial court, in response, found that there were no factors in mitigation that applied. He did not note Robert's age or any of the youthful characteristics of Robert. And the court found that there was no reason to not impose the sentence and the maximum allowed by the cap. And, again, there is no guidance on what is required to prove prejudice in this context. So, a defendant is not expected to conclusively prove cause and prejudice. And, as the state stated, leave should only be denied when it is clear from review of the petition that the claim fails as a matter of law or the petition is insufficient to justify further proceedings. There are other cases where it was a very similar post-conviction petition, such as Robert filed, and the court found that because of what occurred in the case, that that defendant should be allowed to go to further proceedings. Again, Robert is not asking this court to hold that his sentence is a violation of the proportionate penalties clause. Robert, there's no indication that Robert is a lawyer in this case. The reason we have second stage proceedings is to have an attorney appointed to help properly shape those claims into legal arguments. And, yes, Robert did state enough here. He was not allowed to bring this claim in 2001. At that time, even juveniles were not necessarily treated any differently. They could receive a life sentence without the possibility of parole. Robert recognizes he was 18 years old. He was a teenager on the cusp between being a juvenile and an adult. Furthermore, it is important to note that Robert lost his first post-conviction petition through no fault of his own. He filed a petition for relief from judgment. The trial court improperly recharacterized that petition into a post-conviction petition. However, our Supreme Court's case, People v. Shellstrom, which discussed how the trial court must give admonishments and allow the defendant to withdraw the petition if he chooses and to show what he could lose, that case was decided a year later after Robert voluntarily dismissed his appeal. And it is not retroactive. So this is not a case where this court has heard numerous appeals. Robert has never stated that he is not responsible for his actions. Robert is just asking this court to be able to have the opportunity to present evidence to show that he falls under this claim as an 18-year-old who there's evidence that he struggled with a lot of issues such as fronting drug and alcohol abuse. Yes, while Robert stated he did not believe he had an alcohol issue at the time, the fact that he did drink every single day at the age of 17 could have affected him, and the record is not fully developed here. So all Robert is asking is for a chance to further develop the record so he can support his claim that his sentence violates the Illinois Proportionate Penalties Clause. In light of this recent research on brain development that Robert was not allowed not able to bring sooner, he did exactly what our Supreme Court procedurally has asked of him, and he has met the burden of showing cause and prejudice in this case. Furthermore, fairness and justice should allow Robert to proceed on his claim here. Therefore, Robert respectfully asked this court to reverse the trial court's summary dismissal of his post-conviction petition and remand for second stage proceedings. Does the court have any other questions? I don't. Justice Moore? Justice Welsh? None. Okay, then would that conclude your argument, Ms. O'Connor? Yes, Your Honor. Thank you. All right. Thank you both for your argument. This matter will be taken under advisement, and we will issue a disposition in due course. Have a great day, ladies.